# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-B-06968 |
| ERIE PROPERTY LLC, an Illinois limited liability ) | |
| company, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Susan Pierson Sonderby |

## AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

THIS MATTER COMING TO BE HEARD on hearing on Motion to Authorize Use of Cash Collateral ("Motion") filed by Erie Property LLC as Debtor and Debtor-in-possession ("Debtor") on March 9, 2009; notice of the final hearing on April 7, 2009 having been given to all entitled thereto; no objections having been made to the relief requested in the Motion; the Court having held a final hearing on the use of cash collateral on April 7, 2009 ("Final Hearing") as provided under Section 363 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code") and Rule 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Rules"); the Court, being duly advised in the premises; and the Parties having stipulated as follows:

1.   Filing. On March 2, 2009 ("Filing Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Code. The captioned case is a single-asset real estate case, as defined in §101 (51)(B) of the Code. Debtor owns and operates two buildings commonly known as 357-363 West Erie Street, Chicago, Illinois ("Property"). The Property is commercial space.

2.   Manulife Pre-Petition Indebtedness and Security. Debtor and Manulife are parties to a promissory note in the original amount of $9.3 million dated June 1, 2004. The note indebtedness was secured by a Mortgage and Security Agreement (the "Mortgage") and Assignment of Rents and Leases ("Assignment") each dated June 1, 2004 and each recorded

QB\792832.00051\7747163.3

June 9, 2004, as Document No. 0416144061 and 0416144063 respectively. Pursuant to §1.1 of the Mortgage, Debtor granted to Manulife a security interest in, *inter alia*, the Property and all improvements thereto, all machinery, equipment and fixtures, all leases and rents from the Property, and all accounts, escrows, claims, deposits and all other general intangibles specific to or used in connection with the operation of the Property. Manulife also recorded a UCC financing statement on June 2, 2004 with the Illinois Secretary of State as Document No. 008758735. Manulife asserts a claim against Debtor of not less than $12.6 million.

Based on the Mortgage, Assignment of Rents and financing statement, Manulife has a valid, first priority, perfected Mortgage and security interest in all assets of the Debtor set forth in the Mortgage and Assignment, including, without limitation, all rents, income, issues, profits, revenues, royalties, rights and benefits arising from the Property ("Rents") and other Cash Collateral as defined herein and within the meaning of §363 of the Code.

3.    First Midwest. Debtor and First Midwest are parties to a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing ("First Midwest Mortgage") dated March 10, 2006 and recorded against the Property March 24, 2008. The First Midwest Mortgage states that it secures a maximum of $1.6 million of indebtedness of other entities, one of which is a tenant of the Property and an entity related to the Debtor.

4.    Pre-Petition Receiver. In July, 2008, Manulife brought an action to foreclose the Manulife Mortgage in the Circuit Court of Cook County, Illinois ("State Case"). The State Case is captioned <u>Manulife (International) Limited v. Erie Property LLC and First Midwest Bank et al.</u> and is numbered 08 CH 24149. On Manulife's motion, Robert B. Devine was appointed to act as Receiver for the Property in the State Case.

On January 29, 2009, a Judgment of Foreclosure and Order of sale was entered in the State case ("Foreclosure Judgment"). Pursuant to the Foreclosure Judgment, the Property was to be sold at a judicial sale scheduled on March 3, 2009, and continued to March 17, 2009.

5.  **Agreed Order Regarding Pre-Petition Receiver.** On March 10, 2009, the Court entered an *Agreed Order Regarding Pre-Petition Receiver*, which provides that the Receiver shall retain possession of all Cash Collateral, as defined therein. The Receiver was also authorized to make disbursements of Cash Collateral in accordance with orders of this Court obtained by Debtor after notice and hearing.

6.  **Cause.** In order to preserve and maintain the Property, the Monthly Expenses (as hereinafter defined) of utilities, maintenance, insurance and management (through the Receiver) are necessary and should be paid.

NOW, THEREFORE, the Court herby makes the following findings and Order:

A.  **Notice.** Notice of the Motion was served on (i) counsel for Manulife (International) Limited ("Manulife") and First Midwest Bank ("First Midwest"), (ii) the United States Trustee, (iii) Debtor's twenty largest unsecured, non-insider creditors, and (iv) all parties requesting notice in this case. Such notice is sufficient and complies with the requirements of Section 363 of the Code and Rules and any other applicable law. After entry of the Agreed Order Authorizing Interim Use of Cash Collateral on March 17, 2009, the Debtor served a Notice of Final Hearing on the twenty largest unsecured creditors in this case. Copies of the Notice and Certificate of Service were filed with the Bankruptcy Court on March 24, 2009.

B.  **Cash Collateral.** For purposes of this Order and subject to the reservation of rights contained herein, the term "Cash Collateral" shall be as defined in Code §363, and shall include, without limitations, the Rents.

    C.    <u>Use of Cash Collateral.</u> Debtor is authorized under the terms of this Final Order to continue to use Cash Collateral received from and after the Filing Date only in accordance with the total monthly expense itemization set forth in Exhibit A hereto (the "Monthly Expenses")[1]. Debtor is permitted to deviate from an expense amount set forth on Exhibit A by up to ten percent (10%) per line item, up to an aggregate maximum of five percent (5%) of the total monthly expenses set forth on Exhibit A. In addition, Debtor is authorized to pay two quarterly expenses, (i) those of the United States Trustee; and (ii) building security expenses, but only after notifying Manulife in advance of the amount of such proposed quarterly expenses.

    D.    <u>Replacement Lien.</u> As adequate protection for (i) the interests of Manulife and First Midwest in Cash Collateral and for Debtor's use of Cash Collateral; and (ii) for any diminution in value of the Property from and after the Filing Date, Manulife and First Midwest each are hereby granted, as additional security for their claims against Debtor and/or the Property (as such claims are allowed by final order of this Court or agreement of the Parties), replacement security interests in and liens against all Cash Collateral generated from and after the Filing Date ("Replacement Collateral," and such replacement security interests and liens being the "Replacement Liens"), to the same extent and in the same priority as their respective security interests existed on the Filing Date. The Replacement Liens in the Replacement Collateral shall be subordinate only to enforceable and perfected liens and security interests in existence on the Filing Date with a priority senior to those of Manulife and First Midwest. The Replacement Liens granted herein are valid, enforceable and fully perfected, and no further filings or recordation, or other act is necessary to create or perfect the Replacement Liens. To the extent that such Replacement Liens are insufficient to compensate Manulife from diminution, if any, in

---

[1] The Monthly Expenses, as set forth in Exhibit A, are the projected monthly expenses based upon the one-month period from the Filing Date.

QB\792832.00051\7747163.3                              4

the value of the property of the estate on which Manulife had a perfected security interest as of the Filing Date, Manulife is hereby granted a priority administrative claim in the amount of said diminution, over all administrative expenses of any kind whatsoever incurred in this reorganization, or in any subsequent Chapter 7 proceeding of the Debtor, including, but not limited to, all administrative expenses specified in or allowed pursuant to §503(b) and 507(b) of the Code in the amount of said diminution. The Court makes no determination regarding the value of the Property.

E. <u>Reservation of Rights</u>. Nothing contained in this Order constitutes a finding or other determination with respect to the adequacy of the protection of the interest of either Manulife or First Midwest in their respective collateral or shall preclude either Manulife or First Midwest from seeking additional or different adequate protection (as defined in Section 361 of the Code), and this Order is without prejudice to the rights of either Manulife or First Midwest to seek to terminate or modify the automatic stay, move to dismiss this case, or take any other action, or the right of Debtor and other parties in interest to oppose such relief requested.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

F.  Jurisdiction; Core Proceeding; Effectiveness. The subject of this Order is a "core" proceeding with the meaning of 28 U.S.C. § 157. This Court has jurisdiction over this proceeding of the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This Order is a binding order of the Court, and shall be binding upon and inure to the benefit of Manulife, First Midwest and Debtor and its successors and assigns (including any successor trustee or estate representative in the Case).

Dated: APR 07 2009

IT IS SO ORDERED.

_____
United States Bankruptcy Judge